## Howe Sewing Machine Co. *versus* Sloan.

Goods intrusted to an agent to be sold on commission are not liable to distress for rent due by the agent: Karns *v.* McKinney, 24 P. F. Smith 387, followed.

October 24th 1878.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ.  WOODWARD, J., absent.

Error to the Court of Common Pleas of *Erie county :* Of October and November Term 1878, No. 125.

Replevin by the Howe Sewing Machine Company against S. S. Sloan for twelve sewing machines which the plaintiff had consigned to G. C. McKinley for sale, and upon which defendant had distrained for rent due by said McKinley.

Under the provisions of the Act of May 14th 1874, Pamph. L. 166, the case was referred to M. Crosby, Esq., as referee.  He found, as facts, that McKinley, who was engaged in selling the machines of the plaintiff, had leased the premises for which the rent was due and on which the distress was made in his own name, and occupied them for the purposes of his business.  Before the referee, as found by him, a general agent of the plaintiff testified: " That the property distrained was that of the plaintiff; that it was simply placed in the hands of McKinley to sell on commission, and that the plaintiff had nothing to do with the renting of the store by McKinley; that McKinley was to sell for the company for thirty per cent. of each sale, the company having the right to reject the sales; that the company paid him $10 when a sale was accepted, and the balance when the company had received a certain amount; that the property distrained was worth $630 to plaintiff.

The defendant also testified that he did not know at the time of making the lease, or at the time of the distress, that the property was that of the plaintiff; that it came upon the premises marked to G. C. McKinley; that he did not know until after the distress that the machines were only consigned to him.

The plaintiff submitted the following points, to which are appended the answers of the referee :

1. That if the referee should believe that G. C. McKinley was the agent, consignee or factor of the plaintiff, and the property distrained the property of the plaintiffs and only consigned to said

[Howe Sewing Machine Co. *v.* Sloan.]

McKinley, that in that case the defendant could not distrain it, and the decision must be for the plaintiff.

Ans. "I do not find that McKinley was an agent, factor or consignee of the plaintiff in the usual acceptation of the terms."

2. That if the defendant knew that the property of the Howe Machine Company was only consigned to McKinley as such agent or factor, that in that case the decision should be for the plaintiff.

Ans. "I find from the evidence that the defendant did not know till after the distress that the property was that of the plaintiff."

In an opinion, the referee, inter alia, further said :

"It is a settled principle of the common law that the goods of a stranger, found on demised premises, are liable for rent, and may be distrained therefor.

"Upon this principle of law the plaintiff's machines were liable to distress for rent due by McKinley, unless, under the circumstances of the case, they fall within some one of the several exceptions established in the interest of commerce and for the benefit of those compelled to intrust their property temporarily to the possession of others.

"Such exceptions seem to have been fully discussed in Karns *v.* McKinney, 24 P. F. Smith 387, none of which seem to be like the case in question.  The machines were certainly not in a warehouse on storage, nor were they in McKinley's possession as an artisan, like cloth in a tailor's shop, &c., nor was McKinley a factor in any sense, as between himself and the landlord or the public at large. It is true he may have received the machines from the plaintiff to sell for a certain percentage on the amount of sales as his compensation, but he was not, in the usual acceptation of the term, a commission merchant.   It may have been known to the plaintiff, but it was not known to his customers, to those who bought machines of him, or to the public, or even to his landlord, the defendant, that he held the property on commission.   He appeared to hold it as owner, and in that respect this case differs greatly from all those mentioned as exceptions to the general rule.

"If I leave goods for storage in a warehouse, or at a freight depot, or on a wharf, for transportation or repairs, with a mechanic, or send them for sale to a generally-recognised and well-known commission merchant, my relation to the goods and to those in whose custody they temporarily are, and perhaps also to the public, so far as the public can have an interest therein, is not the same as if I had consigned them to an individual to sell, as McKinley held these machines for sale, being apparently the owner, but in fact holding them on commission under secret instructions and by virtue of private arrangements between such individual and myself not known or in any manner disclosed to those with whom he dealt.   In the one case my actual relations to the property would be readily comprehended and understood by business men of even dull intelligence,

while in the other it could not be discovered or even *guessed* at by the wisest and the shrewdest dealers.

"If the principle that the goods of strangers found on demised premises are, under *any* circumstances, to be liable to distress for rent, I see no reason why the goods levied on in this case were not so liable."

The decision and judgment were for defendant, when plaintiff took this writ, among other errors assigned being the answers to the foregoing points.

*Thomas Roddy,* for plaintiff in error.—McKinley was only the agent, factor or consignee of the plaintiffs. He sold on commission, and his power over the machines was merely a power of sale upon the conditions prescribed by the company. The landlord occupied half the store that McKinley rented. He knew that the machines were consigned to him to sell on commission, or if he did not it was his duty to ascertain to whom he was giving credit: Brown *v.* Sims, 17 S. & R. 140; Weidel *v.* Roseberry, 13 Id. 180; Riddle *v.* Welden, 5 Watts 14; Cadwalader *v.* Tindall, 8 Harris 422. McKinley being a factor, goods in his possession were privileged from distress: Gilman *v.* Elton, 3 Brod. & Bing. 75; 2 Shars. Black. 8, note 10; Karns *v.* McKinney, 24 P. F. Smith 389; Owen *v.* Boyle, 22 Me. 47; Connah *v.* Hale, 23 Wend. 462; Stone *v.* Matthews, 7 Hill 423; Briggs *v.* Large, 6 Casey 287; Kleber *v.* Ward, 6 W. N. C. 235.

*C. L. Baker* and *C. O. Bowman,* for defendant in error.— McKinley was not a factor. All he had was the right to make a bargain in relation to the property consigned to him. Practically the company was carrying on business in Sloan's store, but of this the defendant had no knowledge.

Karns *v.* McKinney, Brown *v.* Sims, Briggs *v.* Large, *supra,* are all cases where the demised premises were used for warehouse purposes, and this class of cases, in which it is sought to protect customers and persons who temporarily placed their property in the possession of others for storage, or for the purpose of having labor bestowed thereon, properly forms an exception to the common-law rules.

Mr. Justice SHARSWOOD delivered the opinion of the court, November 11th 1878.

The rule of the common law that the goods of a stranger on demised premises are subject to the distress of the landlord has yielded, and must continue to give way to the growing necessities of trade and business. As Chief Justice GIBSON has said: "There is little reason to doubt that the exceptions will, in the end, eat out the rule." It is not a subject upon which it would be wise to draw refined distinctions. It was settled in Brown *v.* Sims, 17 S. & R.

138, that goods on storage were exempt, though the business of the tenant was not exclusively that of a warehouseman. Certainly a man may safely intrust his cattle to a farmer to agist, who raises his own beasts for the drove or the market. Nor is there any reason why a similar principle should not be applied to the case of goods intrusted to an agent to be sold on commission. It is notoriously the usage for merchants—not holding themselves out as commission merchants—to receive and sell goods in that way. In the particular case before us it would seem reasonable to infer that the products of sewing machine companies, the machines themselves being known by the name of the manufacturers, are usually sold by these agents on commission. There was enough to put the landlord on inquiry if notice was necessary. The broad principle which governs the case has been succinctly and happily expressed by our brother MERCUR, in Karns v. McKinney, 24 P. F. Smith 390. "The principle," he says, "covering these cases during the tenancy, except when the goods are in the custody of the law, is this: Where the tenant, in the course of his business, is necessarily put in possession of the property of those with whom he deals or of those who employ him, such property, although on the demised premises, is not liable to distress for rent due thereon from the tenant."

The judgment entered on the decision of the referee is reversed, and the record is remitted to the Court of Common Pleas that judgment may be there entered for the plaintiffs, and their damages for detention ascertained by a writ of inquiry.

Judgment reversed and record remitted.