### Tinware Manufacturing Company *v.* Duff.

*Landlord and tenant—Distress—Sale of goods consigned to tenant after notice of consignment—Trespass.*

Goods placed with a stranger on storage and goods consigned to a tenant as agent for their sale are not liable to distraint for the tenant's rent; but where the landlord has pursued the provisions of the act of 1772 with precision, and such goods have in fact been sold in ignorance of their character and ownership, the landlord may not be held liable for trespass.

If, however, before distress laid upon such goods the landlord has knowledge or notice of their character or ownership, or if he received such notice after the distress, and he proceeds with his distress and sale without allowing opportunity to the owner to assert title by replevin, the landlord is liable for damages in an action of trespass brought by the owner of such goods.

Notice of distraint given to the tenant is no protection to a landlord who sells on a distress warrant after notice that the goods were held by the tenant on consignment.

Argued April 26, 1900. Appeal, No. 138, April T., 1900, by defendants, in suit of the Toledo Tinware Manufacturing Company against R. P. Duff and Edward A. Kitzmiller, partners as P. Duff & Sons, and John Sweeney, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1898, No. 525, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. W. PORTER, J.

Trespass claiming damages in the sum of $609 for the selling on a landlord's warrant of goods averred to have been placed with a tenant for sale on commission. Before EVANS, J.

It appears from the record and evidence that Duff & Sons,

defendants, leased certain premises to John Wilson whose business was that of manufacturer's agent and merchandise broker, of buying and selling on his own account grocer's supplies and renting rooms for the storage of goods, wares and merchandise to others.

There was evidence tending to show that the place of business of P. Duff & Sons was near the leased premises, and they sold goods from time to time to Wilson and were familiar in a general way with the character of the business he was conducting on the leased premises. On May 18, 1898, the tenant's, Wilson's, rent being in arrears, Duff & Sons issued a landlord's warrant, which was placed in the hands of John Sweeney, a regularly deputized constable of the city of Pittsburg. On the same day Sweeney distrained certain goods, amongst others the tin cans claimed by the plaintiff found on the premises, and on the same day left a regular notice of distraint showing the cause of such taking on the desk in Wilson's office on the leased premises, which was actually received by the tenant Wilson. On May 25, 1898, no notice having been given to the landlord or constable that any one, other than the tenant, claimed to own the goods distrained, an appraisement was made, and on the morning of the sale a paper signed by John Wilson Company addressed to P. Duff & Sons was left at the office of the landlord. The paper is as follows: " P. Duff & Sons, Duquesne Way, City. Gentlemen: You are hereby notified that the goods and articles stated below and now in the buildings 24–26 Fayette Street, are not owned by The John Wilson Company, but are the property of the following parties " (here follows a list of goods held on consignment and among them " a lot of tin cans, Toledo Tinware Mfg. Co.") signed, " Yours truly, The John Wilson Company."

The court charged the jury in part as follows :

[But there appears to have been a regular, formal notice given before the sale, that these particular goods were the property of the Toledo Tinware Manufacturing Company. That notice was given prior to the sale; and for the purpose of this case, I instruct you that, having received that notice, it was the duty of the landlord to give the owner of the property time to replevin goods, if they had not already received notice

of the fact that a distress had been made. Therefore, if you find that the owner of the goods had not received, up to the time of the sale, notice that the distress had been levied, this notice was sufficient to stop the sale until the owner of the goods had notice and an opportunity to replevin the goods.] [5]

Verdict and judgment for plaintiff for $609. Defendants appealed.

*Errors assigned* among others were (1) refusal of binding instructions in favor of defendant. (5) To a portion of the judge's charge, reciting same.

*Edward B. Scull,* for appellants.—The owner of a chattel in possession of a tenant which has been distrained for rent and sold, cannot maintain trover for it when notice of the distress has been given to the tenant: Caldcleugh v. Hollingsworth, 8 W. & S. 302.

Under the Act of March 21, 1772, 1 Sm. L. 370, the tenant is the agent of the owner for the purpose of receiving and transmitting the notice of distress.

The doctrine of this case as laid down by Chief Justice GIBSON in 1844 was followed by Briggs v. Large, 30 Pa. 291.

A careful research of the reports fails to disclose a single case in which the landlord was held to be a trespasser where the distress was taken before knowledge or notice of a stranger's ownership, unless there was afterwards a failure to comply with some of the requirements of the act of March 21, 1772.

The court in charging the jury (fifth assignment of error), decides that the written paper left at the landlord's place of business was notice to the defendants that the property sold was not the property of the tenant.

A question of actual notice is for the jury: Rhines v. Baird, 41 Pa. 256.

It is the duty of the court to interpret a contract, and of the jury to determine whether it has been proven: Folsom v. Cook, 115 Pa. 539.

To affirm this case is to overrule Caldcleugh v. Hollingsworth, 8 W. & S. 302.

*Jas. T. Buchanan,* for appellee.—Defendants and Wilson also

did some buying and selling on their own account and not on commission, and Wilson also did a storage business, and these facts being 'true it was enough to put the defendants upon inquiry when they made their distraint, if any notice was necessary : Howe Sewing Machine Co. v. Sloan, 87 Pa. 438.

How could the plaintiff commence an action of replevin to recover its goods when it had no knowledge or notice of the distraint?

But it is alleged that Wilson, the tenant, had notice, and that that was notice to plaintiff, whose agent for the purpose of giving notice it is claimed he was, and in support of this proposition the defendants cite and rely upon the case of Caldcleugh v. Hollingsworth, 8 W. & S. 302.

In Caldcleugh v. Hollingsworth the tenant, McEwen, was a machinist. It does not appear whether he manufactured machines or only repaired; neither does it appear that there was anything to put the landlord upon inquiry, but it does appear that the landlord had no notice of any kind at any time that the machine belonged to any person other than the tenant.

Had the landlord had notice before the sale that the machine was not the property of the tenant it is to be presumed in the light of later decisions that Caldcleugh v. Hollingsworth would have been decided differently: Briggs v. Large, 30 Pa. 287; Machine Co. v. Spencer, 147 Pa. 466; Brown v. Stackhouse, 155 Pa. 582.

The question of notice being for the jury is not argued, because there is no dispute about it. It was in writing and defendant Duff admitted having received it before the sale. The question whether it was sufficient notice was for the court. It is, therefore, respectfully submitted that the judgment of the court below ought to be affirmed.

OPINION BY WILLIAM W. PORTER, J., November 19, 1900:

The common-law rule that all goods upon demised premises are liable to distraint for rent, still obtains in Pennsylvania although, as prophesied by Chief Justice GIBSON, in Brown v. Sims, 17 S. & R. 138, it has in some measure been "eaten out" by exceptions. Thus, it has been held that goods placed by a stranger with the tenant on storage and goods consigned to the tenant as agent for their sale, are not liable to sale under dis-

tress for rent: Brown v. Sims, supra; Karns v. McKinney, 74 Pa. 387; Howe Sewing Machine Co. v. Sloan, 87 Pa. 438; Page v. Middleton, 118 Pa. 546. These exemptions are not absolute, however, since where the landlord has pursued the provisions of the act of 1772 with precision, and such goods have in fact been sold in ignorance of their character and ownership, the landlord may not be held liable for a trespass: Caldcleugh v. Hollingsworth, 8 W. & S. 302; Esterly Machine Co. v. Spencer, 147 Pa. 466. To hold otherwise would be to put upon the landlord the burden of sustaining the tenant's title to each chattel sold, in case, subsequent to sale, title should be asserted by a third party in an action of trespass. It was the purpose of the act of 1772 to relieve from such a burden. If, however, before distress laid upon such goods, the landlord has knowledge or notice of their character or ownership and proceeds with his distress and sale, without allowing opportunity to the owner to assert title by replevin, the landlord is liable for damages in an action of trespass brought by the owner of such goods: Brown v. Stackhouse, 155 Pa. 582.

What knowledge had the landlord of the character and ownership of the goods sold in this case? It was proven on the trial that the plaintiffs were the owners of the goods distrained upon and sold; that the goods were consigned to the tenant for sale on commission, and were in storage upon the demised premises. It was further proven that the landlord knew the business of the tenant; and that, while the latter dealt on his own account, he also held consigned goods on sale on commission and in storage. Thus was the landlord put, to some extent, on his guard when making the distraint. See Howe Sewing Machine Co. v. Sloan, supra. He justifies the levy upon the particular goods sold, on the ground that the tenant indicated them as his own property. There is some testimony that notice was given to the constable that the goods were not the property of the tenant, and that an employee of the tenant told the landlord that none of the goods upon the premises belonged to the tenant. There was thus a conflict as to the knowledge had by the landlord at the time of making the distraint. Aside from this, however, before the sale, the landlord received a formal written notice signed by the tenant, that the goods distrained upon and about to be sold were the goods of

the "Toledo Tinware Manufacturing Company, on consign-ment." No opportunity was thereafter given, by the landlord to the owners thus named, to replevy the goods.

The court below charged, as complained in the fifth assign-ment: "For the purposes of this case, I instruct you, that hav-ing received that notice, it was the duty of the landlord to give the owners of the property time to replevin the goods, if they had not already received notice of the fact that a distress had been made." There is no error committed in this instruction. In view of the knowledge of the character of the tenant's busi-ness had by the landlord, and particularly in view of the notice given, it was the duty of the landlord to afford reasonable op-portunity to the owners of the goods to replevy. See Esterly Machine Co. v. Spencer, supra. No error injurious to the de-fendant was committed in submitting to the jury the question of actual notice of the distraint and sale.

It is urged that the landlord was obliged only to serve the notice, required by the act of 1772, upon the tenant; that he so served it; that the tenant was the agent of the owner of the goods, and that thus the plaintiffs had opportunity to replevy their goods. It is said somewhat broadly in Caldcleugh v. Hol-lingsworth, supra, that the tenant is the agent of the owner, and that it is his duty to forward the notice of levy to his principal, but the point of that case was that "no notice was given to the landlord before selling, that the machine distrained was the property of another:" Brown v. Stackhouse, supra. No case has been called to our attention in which notice to the tenant was held to be a protection to a landlord, who sold after notice that the goods were held by the tenant on consignment; and in Briggs v. Large, 30 Pa. 287, it was expressly held that the ten-ant was not an agent of the real owner of such goods to the ex-tent of waiving any of the essentials in the process required by the act of 1772. It is not necessary to pass separately upon the several assignments.

Finding no reversible error committed on the trial, the judg-ment is affirmed.