## Michael Trieber *vs*. Wm. Knabe and Edward Betts, Surviving Partners of Henry Gahle.

A *piano-forte* belonging to a stranger, and hired to a *music teacher* boarding at a public hotel, and found in the hotel, and not being in use as an instrument of trade or profession, and there not being a sufficiency of other goods on the premises, is liable to be distrained for rent due by the hotel keeper.

The instruments of a man's trade or profession are not *absolutely* exempt from liability for rent, but only in case of their being in actual use, *or* when there is a sufficiency of other goods on the premises to meet in full the distress.

It is no objection to a prayer that it asks *less* from the court than the party offering it was, upon the facts of the case embodied in it, and left to be found by the jury, *entitled to*.

APPEAL from the Circuit Court for Allegany county.

*Replevin* brought on the 25th of March 1856, by the appellees against the appellant, to recover a piano-forte alleged to be the property of the plaintiffs.

*Exception*. The case was tried upon an agreed statement of facts, which with the prayer of the defendant rejected by the court, (PERRY, J.,) is sufficiently stated in the opinion of this court. To the rejection of his prayer the defendant excepted, and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*J. H. Gordon* for the appellant:

The general rule is, that the goods of a stranger upon the demised premises are distrainable. 3 *Kent*, 476. 3 *Burr.*, 1498, *Francis vs. Wyatt*. 4 *Term Rep.*, 568, *Gorton vs. Falkner.*. 6 *H. & J.*, 498, *Ratcliff vs. Daniel*. 7 *H. & J.*, 58, *Cromwell vs. Owings*. *Ibid.*, 380, *Neale vs. Clautice*. A boarder having a private room in a hotel, is in the nature of a sub-tenant, and his property is, therefore, distrainable, and if he is entitled to claim an exemption for his goods, it can only extend to such property as is in his possession, and necessary

for his use as a boarder, and not furniture and other articles usually furnished by the hotel keeper. 1 *Hill*, 565, *Matthews vs. Stone*. The piano, in this case, was out of the possession of Stinebrecker, and in the family room of the tenant, where it had remained from November till February, and is therefore liable to distress. 17 *Wend.*, 358, *Gilbert vs. Moody*. 1 *Hill*, 568. The case in 1 *Hill* was afterwards reversed by the Court of Errors, in 7 *Hill*, 429, but under the New York statute, exempting property of boarders, and the decision of the Supreme Court is better authority than that of the Court of Errors, particularly as the latter court was divided upon that question.

This property does not come within any of the rules of exemption, and is therefore liable. 1 *Mees. & Wels.*, 647, *Muspratt vs. Gregory*, and same case in 3 *Mees. & Wels.*, 677. 7 *Mees. & Wels.*, 450, *Joule vs. Jackson.* 9 *Bing.*, 673, *Fenton vs. Logan*, in 23 *Eng. C. L. Rep.*, 417. 23 *Wend.*, 472, *Connah vs. Hale.* 17 *Wend.*, 358. The courts in some of the States have changed the common law rule by extending the cases of exemption, but by our Declaration of Rights, art. 3, we are governed by the common law, so far as it has not been changed by the legislature. The cases of *Brown vs. Sims*, 17 *Sergt. & Rawle*, 138; *Riddle vs. Welden*, 5 *Whar.*, 1; *Butler vs. Morgan*, 8 *Watts & Sergt.*, 53, show that the courts of Pennsylvania have abandoned the common law rule. The case of *Stone vs. Matthews*, in 7 *Hill*, 429, as already stated, was under the New York statute, exempting property of boarders in a boarding-house.

*Thos. Devecmon* for the appellees:

1st. It is not denied that, in general, all goods found upon the demised premises are liable for the rent, but to this rule there are various exceptions. Articles that may be temporarily placed upon the premises by way of trade, and belonging to third persons, are exempted from distress upon the broad principle of public convenience, and for the benefit of commerce. The fact that the piano was in the actual use of the keeper of the hotel by the boarder's consent, does not at all vary the

principle. Upon *principle* this fact could not vary the question, for if the exemption exists at all, it is absolute, and does not depend upon any condition that the guest or boarder shall retain the *actual possession*. So, also, the fact that the piano was in the possession of the agent of the plaintiffs, does not affect the question. The agent being in possession, and being a guest, entitles the plaintiffs to the benefit of any exemption which the guest, their agent, was entitled to. In support of these views, reference is made to the following authorities: 3 *Kent*, 477, and note *(c.)* 5 *Whart.*, 1, *Riddle vs. Welden.* 7 *Hill*, 429, *Stone vs. Matthews.* 2 *McCord*, 39, *Youngblood vs. Lowry.* 17 *Sergt. & Rawle.*, 139, *Brown vs. Sims.* 4 *McCord*, 552, *Walker vs. Johnson.* 22 *Maine*, 47, *Owen vs. Boyle.* 23 *Wend.*, 463, *Connah vs. Hale.* 5 *Blackford*, 489, *Harris vs. Boggs.* 1 *Smith's Lead. Cases*, 187, 454. 3 *Brod. & Bing.*, 75, *Gilman vs. Elton.* 1 *Bing.*, 283, *Thompson vs. Mashiter.* 1 *Eng. Law & Eq. Rep.*, 373, *Brown vs. Arundell.* 20 *Eng. Law & Eq. Rep.*, 370, *Williams vs. Holmes.* 6 *H. & J.*, 47, *Towson vs. Havre-de-Grace Bank.*

2nd. The court was right in refusing the instruction asked, for the reason that it submits a question of law to be found by the jury. It asks the court to say to the jury, that if they find the facts agreed upon, then they *may* also *find* that the goods in question were *liable to distress*.

LE GRAND, C. J., delivered the opinion of this court.

This is an action of replevin, and comes before us on the ruling of the court below on an agreed statement of facts. The suit involves the title to a piano. The facts agreed upon, which are material to be stated for the decision of this case, may be thus enumerated: The piano in controversy belonged to the plaintiffs, and was by them hired to one Stinebecker, a music teacher, in Cumberland, in the summer or fall of the year 1854; Stinebecker boarded and lodged with one Helfelfinger, the keeper of the "Revere House," and the tenant of the defendant. The "Revere House" was a public hotel. After the piano had been for some time in the room occupied by Stinebecker, in consequence of his removal to a smaller

room in the hotel, the piano was removed to the private family room of Helfelfinger, and there remained until, in the month of February 1856, it was taken by virtue of a distress for rent due from the tenant, Helfelfinger, to his landlord, the defendant. It is admitted the distress was in due form, and also "that all the property on the premises at the time of the distress, and liable to be distrained, was not sufficient to pay the whole rent" due. The piano was sold under the distress warrant, and the defendant became the purchaser of it.

The question which arises on this state of facts is, was the piano, so circumstanced, under the law, exempt from liability to distress for rent? We are of the opinion it was not.

We have carefully examined the cases referred to by counsel in argument, and duly weighed the reasons addressed to our judgments, but in neither do we discover any justification for us, as a court in Maryland, to decide in favor of the exemption of the piano from liability. As a general principle, all movables found on the demised premises are subject to distress. To this there are, however, some exceptions, and the question in the present case is, does this piano, under the circumstances, fall within any of these exceptions? In the case of *Simpson vs. Hartopp, Willes,* 512, Lord Chief Justice Willes, in an opinion of clearness and precision, lays down the whole law as applicable to what is, and what is not, liable to distress. After stating the general principle, he proceeds as follows to state the exceptions to it:

"1st. Things annexed to the freehold.

"2nd. Things delivered to a person exercising a public trade, to be carried, wrought, worked up, or managed in the way of his trade or employ.

"3rd. Cocks or sheaves of corn.

"4th. Beasts of the plough, and instruments of husbandry.

"5th. *The instruments of a man's trade or profession.*

"The first three sorts were absolutely free from distress, and could not be distrained, even though there were no other goods besides. The last two are only exempt *sub modo;* that is, *upon a supposition that there is sufficient distress besides.*"

From the rendition of the judgment in *Simpson vs. Hartopp,* to the present time, the correctness of the opinion of the court therein has never been questioned, so far as we know, either in England or this country. The most that has been contended for is, that within the reason and principles of that decision, the courts are authorized, with a view to the public good and convenience, to embrace within the exceptions to the general rule a large class of cases in which there would be great hardship and serious interruption to the safe dealings of the community, if they were not so included. We are free to confess this view has been enforced with a good deal of sound reasoning and good sense. It rests mainly on the *quasi* feudal origin of the right of distress, the change in the business and intercourse of the world since distress became a part of the law of landlord and tenant, and the facilities which an enlightened policy should afford to the meritorious pursuits of life. This aspect of the question the curious will find very forcibly put by Baron Parke, in *Muspratt vs. Gregory,* 1 *Mees. & Wels.,* 650; by Justice Bay, in *Youngblood vs. Lowry,* 2 *McCord,* 39; and by Chief Justice Gibson, in the case of *Riddle vs. Welden,* 5 *Whart.,* 1. We refer to these opinions as embracing all which, perhaps, could be urged in furtherance of the widening of the circle of exemption But, as we have already in effect said, we cannot *judicially,* in the present state of the law of Maryland, give our assent to them.

If the present case can be brought under any of the heads or classes of exempted articles specified by Lord Chief Justice Willes, it must be under the 5th, which is, *"the instruments of a man's trade or profession."* Now we have seen this freedom from distress is not absolute, but dependent on circumstances which are not in this case, *the article was not in use as an instrument of trade or profession, nor was there a sufficiency of other goods on the premises to meet in full the distress.* In the case before us, there is an absence of both of those ingredients. It is not shown, by the agreed statement of facts, that this piano, at the time of the distress, was in use as an instrument of profession, nor are we permitted, by the terms of the submission, to infer such use from the profession of music

teacher of the hirer; and, besides, it is expressly stated there was an insufficiency of other property on the demised premises to satisfy the rent due the landlord. This being so, the plaintiffs cannot bring themselves within any of the above enumerated exceptions. Nor do we think they can successfully avail themselves of the doctrine which protects the baggage of a *transient* boarder and lodger at a public inn. The only case which we have been able to find, in any way countenancing such a pretension, is the one to which we have referred, reported in 5 *Whart.*, 1. That, undoubtedly, goes the whole length of declaring the goods of a boarder are not responsible for rent due by the keeper of a boarding house. To the eminent jurist who gave that opinion, we are second to none in yielding the homage of profound respect, but, notwithstanding this, we are unable to find him supported either in England or in this country, and, as a consequence, we must adhere to what we consider the long and well-established doctrine; a doctrine which, it is apparent from the legislation of many of the States of the Union, and also of our State, (act of 1845, ch. 130,) the community recognized and acted upon. If anything were wanted to fortify the very able opinion in *Simpson vs. Hartopp*, it may be found in Lord Denman's opinion, in his review of the case of *Muspratt vs. Gregory*, 3 *Mees. & Wels.*, 677, (subsequently concurred in by Baron Parke, in *Joule vs. Jackson*, 7 *Mees. & Wels.*, 454,) and that of Chief Justice Tindal, in *Fenton vs. Logan*, 9 *Bing.*, 676, (23 *Eng. C. L. Rep.*, 416.)

If, as we have said in other cases of supposed hardship, the rules of the common law are found unsuited to a case like the present, the constitution has confided to another branch of the government the power of alteration—it is with the legislature.

There was but one prayer submitted in the case, and that by the defendant, which was refused by the court. It is as follows: "If they (the jury) shall believe all the matters agreed upon in the agreement now in evidence before them to be true, then they may also find that the piano-forte now in question was liable to distress for the rent of said Treiber, and that said piano-forte was legally sold to Treiber, under said

distress, and if they do so find, then their verdict ought to be for the defendant."

It is objected to this prayer, on behalf of the plaintiffs, that it is defective in submitting a question of law to the jury, and this defect is supposed to consist in the use of the words, "they (the jury) *may* also find that the piano-forte, now in question, was liable to distress from rent," instead of the words, "they *shall* find," &c. It is clear from what we have said, that in our opinion the plaintiffs, on the facts in the case, ought not to maintain their action, and surely it is a strange objection to urge against the defendant that he asked *less* from the court than he was entitled to. We perceive no force in the objection. We reverse the judgment.

*Judgment reversed and procedendo awarded.*

(Decided January 11th, 1859.)