## Clothier v. Braithwaite, Appellant.

*Landlord and tenant—Distress—Bailment—Goods sold on commission.*

Where the owner of a stock of merchandise places the same in the hands of an agent or trustee, who is also a dealer, in trust to sell at not less than certain fixed prices, and to account to the owner for the proceeds, the owner reserving the right to terminate the arrangement and take back the unsold goods at any time, if the agent or trustee does not perform his duties satisfactorily to the owner, the compensation of the dealer to be measured by the excess for which he sells the goods over the prices fixed in the agreement, such goods are not subject to distress for rent of the premises on which the agent or trustee conducts the business of selling them; and this is the case although the trustee or agent sells goods of his own, and does not sell goods on commission for any other person.

Argued Oct. 16, 1902.    Appeal, No. 125, Oct. T., 1902, by defendants, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1901, No. 765, on verdict for plaintiff in case of Conrad F. Clothier and Thomas A. Burrows, trading as Clothier & Burrows, v. R. M. Braithwaite & Company and Charles F. Josephs. Before RICE, P. J., BEAVER, W. W. PORTER and W. D. PORTER, JJ.    Affirmed.

Replevin for goods distrained.    Before WILSON, J.

The facts are stated in the opinion of the Superior Court.

The court refused binding instructions for defendant.    Defendant appealed.

Verdict and judgment for plaintiff.    Defendant appealed.

*Error assigned* was in refusing binding instructions for de-fendant.

*John G. Johnson*, with him *Charles H. Downing*, for appel-lants.

*Samuel M. Hyneman*, for appellees.

OPINION BY RICE, P. J., April 20, 1903 :

This is an appeal from a judgment upon verdict in favor of plaintiffs in an action of replevin for goods distrained for ar-rears of rent owing to the defendants by one Baumblatt. The goods were part of a larger stock owned by the plaintiffs, who being desirous of retiring from the business of manufacturing and selling bicycles, in which they had been engaged, delivered possession of their entire stock of merchandise to Baumblatt in trust to sell the goods at not less than certain specified prices and to pay over the proceeds of sale immediately upon receipt thereof to the plaintiffs. Shortly after the execution of the paper Baumblatt leased the defendants' premises for the " sale, storage, light repair and manufacture of bicycles," where for about two years prior to the distress he conducted the busi-ness of selling the goods thus received from the plaintiffs, and, it would seem, other merchandise of like character which he manufactured. He did not hold himself out to the world as a commission merchant, nor so far as appears did he receive other goods to be sold on commission. While it was not shown that the defendants knew, prior to the lease, of the arrangement be-tween him and the plaintiffs, it was admitted on the trial that they knew of it at least two or three months before the distress. In the writing evidencing the transaction between the plaintiffs and Baumblatt it was stipulated that accurate accounts of all sales should be kept by a bookkeeper selected by the plaintiffs and paid by Baumblatt, which accounts should at all times be open to the inspection of the plaintiffs ; also, that the plaintiffs might at any time, upon a failure of Baumblatt to perform his duties as trustee to their satisfaction, terminate the trust and take back all of the goods remaining unsold ; also, that Baum-blatt was not to receive any allowance for services or expenses out of the proceeds, and that his only benefit or compensation

was to be the excess in the prices for which he should sell the
goods over the prices specified in the schedule attached to the
agreement; also, that if the plaintiffs should continue Baum-
blatt as trustee until out of the sales made by him the plaintiffs
should have received $10,200, then in consideration of a pay-
ment to them of $10.00 they would execute and deliver a bill
of sale for the balance of the goods remaining unsold. The
question whether the paper showed the true nature of the trans-
action between the plaintiffs and Baumblatt, or was a mere sham
concocted for the purpose of shielding goods really sold to
Baumblatt from the grasp of his creditors, was submitted to
the jury with instructions quite as favorable to the defend-
ants as they were entitled to ask under the evidence. The
same is true of the question whether or not the plaintiffs did
anything to conceal the true nature of the transaction from the
defendants or others who might be affected by it. The verdict
in favor of the plaintiffs, therefore, has established the facts,
that the transaction between the plaintiffs and Baumblatt was
precisely what the paper showed it to be, that it was entered
into for an honest purpose, and that the plaintiffs did nothing,
aside from their delivery of the goods to Baumblatt under the
agreement, which would bar them from asserting their title in
the present action.

The agreement under which the goods were deposited with
Baumblatt does not differ in essential particulars from the con-
tract construed in Keystone Watch Case Co. v. Fourth Street
Nat. Bank, 194 Pa. 535, which was held to be a valid bailment
and not fraudulent as to creditors. That question is not open
to discussion; indeed the counsel for the defendants concede,
at least for the purposes of this case, that the merchandise dis-
trained was, under such agreement, the property of the plain-
tiffs, and was not subject to seizure in execution for Baumblatt's
debts. They argue, however, that it was subject to distress
for rent owing by Baumblatt, and amongst other cases cited by
them in support of their contention they rely upon our decision
in Dorsh v. Lea, 18 Pa. Superior Ct. 447. While that case re-
sembles the present in some particulars, the distinctions between
the two are many and important as a comparison of the agree-
ment as set forth in the opinion of Judge WILLIAM W. PORTER,
and the terms of the agreement in this case will abundantly

show.   From the facts as a whole the conclusion was reached in that case that "the transaction was a sale as to creditors of Kohloff (the tenant), ignorant of any reservation or lien in the vendors," a conclusion which, admittedly, would be unwarranted in the present case.   We have here the case of a perfectly valid agreement, neither actually nor constructively fraudulent as to creditors, under which the owner of a stock of merchandise places the same in the hands of an agent or trustee in trust to sell at not less than certain fixed prices and to account to the owner for the proceeds, the owner reserving the right to terminate the arrangement and take back the unsold goods at any time if the agent or trustee does not perform his duties satisfactorily to the owner, the compensation of the agent or trustee to be measured by the excess for which he sells the goods over the prices fixed in the agreement.   The question is, whether the goods are subject to distress for rent of the premises on which the agent or trustee conducted the business of selling them.   The common-law rule that whatever goods and chattels the landlord finds upon the premises, whether they in fact belong to the tenant or a stranger, are distrainable by him for rent was always subject to many exceptions—Blackstone mentions six classes of things that were exempt – and as has been said repeatedly, must continue to give way to the growing necessities of trade and business.   The principle covering one class of exceptions to the general rule has been thus stated: "Where the tenant, in the course of his business, is necessarily put in possession of the property of those with whom he deals, or of those who employ him, such property, although on the demised premises, is not liable to distress for rent due thereon from the tenant:" Per MERCUR, J., in Karns v. McKinney, 74 Pa. 387. This statement of the law has been quoted with approval in subsequent cases : Howe Sewing Machine Co. v. Sloan, 87 Pa. 438; Page v. Middleton, 118 Pa. 546; Myers v. Esery, 134 Pa. 177.   In the application of the principle to particular cases it has been held that goods placed in the way of trade or storage in the warehouse of one who used the trade and business of a merchant and also received goods and merchandise from merchants and traders in storage, were exempt, and that it was immaterial that the occupation of the tenant was not exclusively that of a warehouseman : Brown v. Sims, 17 S. & R. 138.   In

arriving at this conclusion the court took cognizance of the usage of merchants in this country to take goods on storage. Speaking of this ruling Justice SHARSWOOD said: " Certainly a man may safely intrust his cattle to a farmer to agist, who raises his own beasts for the drove and the market. Nor is there any reason why a similar principle should not be applied to the case of goods intrusted to an agent to be sold on commission. It is notoriously the usage for merchants—not holding themselves out as commission merchants—to receive and sell goods in that way :" Howe Sewing Machine Co. v. Sloan, supra. In Brown v. Stackhouse, 155 Pa. 582, Justice GREEN stated it to be very familiar law that " the goods of a stranger consigned to an agent to be sold on commission are not liable to distress for rent due by the agent." In Dorsh v. Lea, supra, this was expressly recognized as the law, although, as we have seen, it was held not to be applicable to the facts of that case. The premises in question were leased for the purpose of trade and no restriction was put upon the tenant to sell none but his own goods. It is reasonably to be presumed that the landlord had in view the usages of trade and amongst them the sale of goods which might be intrusted to the tenant to sell on commission. Therefore no unforeseen hardship will result to him if the law ordinarily governing the deposit of goods with an agent for sale on commission be applied in his case. Without further elaboration we conclude that the fact, if it be a fact, that Baumblatt engaged in the business of selling his own goods as well as those intrusted to him under the agreement with the plaintiffs would not, of itself, subject the plaintiffs' goods to distress for rent of the premises in which he conducted the business. Nor can we see that the exemption of the goods thus intrusted to him, the sale of which constituted a part of his business, depends upon proof of the reception of consignments from other persons upon the same terms.

Judgment affirmed.